# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| WILLIAM L. BRISCOE, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 14-0155 (RC) |
| | : | | |
| v. | : | Re Document No.: | 3 |
| | : | | |
| COSTCO WHOLESALE CORP., *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO DISMISS; GRANTING PLAINTIFF LEAVE TO FILE AN AMENDED COMPLAINT

## I. INTRODUCTION

Plaintiff William Briscoe ("Briscoe") was an employee in defendant Costco Wholesale Corporation's ("Costco") Washington, D.C. warehouse. Briscoe, proceeding *pro se*, filed the instant lawsuit against Costco and two of its employees in the Superior Court of the District of Columbia alleging violations of the following laws: Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e; D.C. Human Rights Act ("DCHRA"), D.C. Code § 2-1401.01, *et seq.*; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601; the D.C. Wage Payment Act, D.C. Code § 32-1301, *et seq*; and various alleged privacy laws.[1] After Costco

---

[1] Briscoe names two Costco employees as defendants: Mindy Pringle and Dave [Last Name Unknown]. It remains unclear, however, whether either party was properly served, which was the responsibility of the Superior Court because Briscoe was proceeding *in forma pauperis*. Superior Court records indicate that a receipt of service was returned for these defendants, but the alleged signatures of both were illegible, and thus the service was deemed "questionable." Nonetheless, it is unclear which of Briscoe's claims actually are against the individuals anyway, although it is well-settled that Title VII and DCHRA claims cannot be asserted against a plaintiff's co-workers. *See, e.g.*, *Uzoukwu v. Metro. Wash. Council of Gov'ts*, 845 F. Supp. 2d 168, 171 (D.D.C. 2012) (Title VII); *Hunter v. Ark Rests. Corp.*, 3 F. Supp. 2d 9, 17 (D.D.C. 1998) (DCHRA).

removed the action to this Court, the defendant filed a motion to dismiss Briscoe's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court will grant Costco's motion to dismiss. The Court, however, will grant Briscoe leave to file an amended complaint.

## II. FACTUAL BACKGROUND

Before beginning, the Court notes that many of the factual allegations and legal theories of relief in Briscoe's Complaint are unclear and lack specificity, which makes evaluating the factual and legal issues quite challenging at times. Nonetheless, the Court finds that Briscoe sets forth the following facts in his Complaint, all of which must be accepted as true for purposes of deciding Costco's motion.[2]

Briscoe worked at Costco's Washington, D.C. warehouse for fourteen to sixteen months, with approximately six to seven of those months as a part-time employee, though it is unclear when Briscoe actually started or stopped working for Costco. *See* Compl., ECF No. 1-1, at 1. While employed at Costco, Briscoe requested time off to attend court-mandated matters for one of his sons and to care for a daughter after she was sexually assaulted. *See id.* at 2-3. Additionally, Briscoe requested a fifteen-minute change in his schedule and more breaks during

---

[2] The Court also notes that Briscoe asserts a variety of new facts in his response to Costco's motion to dismiss. An opposition brief cannot be used to put forth new allegations and legal theories, and as such, the Court must ignore those facts for the purposes of deciding Costco's motion. *See Sloan v. Urban Title Servs., Inc.*, 689 F. Supp. 2d 94, 114 (D.D.C. 2010). Briscoe, of course, is free to include such facts in an amended complaint if he elects to file one. In addition, Briscoe is cautioned that failure to respond to a legal argument made in a defendant's motion to dismiss can be treated as a concession of that argument and, thus, result in dismissal of the cause of action. *See Payne v. District of Columbia*, 741 F. Supp. 2d 196, 221 (D.D.C. 2010) (explaining that when the plaintiff did "not address his hostile work environment claim at all in his opposition brief," the "Court may treat that claim as conceded"). Although Briscoe is acting *pro se* and some leniency is appropriate, the basic procedural rules of this Court still apply.

shifts in an apparent effort to better enable him to care for another son who suffered from a sleep disorder and autism. *See id.* at 3. Costco denied each of Briscoe's requests, but it appears that Briscoe continued to work at Costco following the denials for an unknown length of time. *See id.* at 3.

At some unspecified time while employed at Costco, Briscoe was in a car accident that forced him to miss more time from work. *See id.* at 4. Upon Briscoe's return to Costco following the accident, a Costco manager ordered him to lift fifty-pound bags despite having a doctor's note recommending otherwise. *See id.* Also following the accident, two Costco managers laughed at Briscoe and said, "I guess [y]ou won't get holiday pay" due to his absence. *Id.* Additionally, Briscoe's managers allegedly "harassed" him for seven to eight months, although the exact details and timeline of what actually happened during this period are scarce and confusing at best. *See id.* at 2. For example, Briscoe was told by a manager that "nobody told him to get sick" after his release from the hospital, but little other details are provided. *Id.* Further, Briscoe alleges that he was "disciplined" on several occasions for his unexcused tardiness and missed shifts, although it is unclear what this discipline actually entailed and when it occurred. Finally, Costco denied Briscoe's request to transfer to a different store location presumably closer to his home, but it is unclear when this request was made or whether Briscoe remained at Costco afterwards. *See id.* at 3-4.

Now before the Court is Costco's motion to dismiss under Rule 12(b)(6). Costco's motion challenges Briscoe's Title VII, DCHRA, FMLA, and privacy claims. For the reasons discussed below, the Court will grant Costco's motion to dismiss in its entirety. The Court, however, will grant Briscoe leave to file an amended complaint because it appears plausible that

some of the factual and legal defects described herein may be cured through a more developed and coherent filing.

## III. ANALYSIS

### A. Legal Standard

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim. *See Greggs v. Autism Speaks, Inc.*, No. 13-1001, 2014 WL 2423981, at *2 (D.D.C. May 30, 2014). A court considering such a motion presumes that the complaint's factual allegations are true and construes them liberally in the plaintiff's favor. *See Campbell v. District of Columbia*, 972 F. Supp. 2d 38, 44 (D.D.C. 2013). A court, however, need not accept a plaintiff's legal conclusions as true, *see Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), nor must a court presume the veracity of legal conclusions that are couched as factual allegations. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002); *Bryant v. Potomac Elec. Power Co.*, 730 F. Supp. 2d 25, 28-29 (D.D.C. 2010).

When a *pro se* plaintiff is involved, "the Court must take particular care to construe the plaintiff's filings liberally, for such [filings] are held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Cheeks v. Fort Myer Constr. Co.,* 722 F. Supp. 2d 93, 107 (D.D.C. 2010) (quoting *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972)). Yet, "even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere

possibility of misconduct.'" *Atherton v. D.C. Office of the Mayor,* 567 F.3d 672, 681-82 (D.C. Cir. 2009) (quoting *Iqbal,* 556 U.S. at 678). Dismissal always remains appropriate "where the plaintiff's complaint provides no factual or legal basis for the requested relief." *Strunk v. Obama*, 880 F. Supp. 2d 1, 3 (D.D.C. 2011) (internal citations omitted).

## B. Title VII and DCHRA Claims

Costco provides three arguments for dismissing Briscoe's Title VII and DCHRA claims. First, dismissal of the Title VII count is proper because Briscoe failed to exhaust his administrative remedies. Second, dismissal is required because Briscoe failed to allege that he is a member of a protected class under both Title VII and the DCHRA. Finally, Briscoe failed to allege severe and pervasive harassment, which is a required element for a hostile work environment claim. The Court addresses each of Costco's arguments below.

### 1. Title VII: Failure to Exhaust

Costco asserts that dismissal of the Title VII count is appropriate because Briscoe failed to exhaust his administrative remedies. Under Section 2000e–5(e), before asserting a Title VII cause of action "a plaintiff must exhaust his administrative remedies by filing an EEOC charge outlining his allegations." *Duberry v. Inter-Con Sec. Sys., Inc.*, 898 F. Supp. 2d 294, 298 (D.D.C. 2012) (citing 42 U.S.C. § 2000e–5(e)). In raising exhaustion as an affirmative defense, the defendant "bears the burden of proving by a preponderance of the evidence that the plaintiff has failed to exhaust his administrative remedies." *Ndondji v. InterPark Inc.*, 768 F. Supp. 2d 263, 276 (D.D.C. 2011) (citing *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997)). This burden requires more than "[m]eager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies." *Dobbs v. Roche*, 329 F. Supp. 2d 33, 38 (D.D.C. 2004). If the defendant meets its burden, the burden shifts to the plaintiff to demonstrate that dismissal is not

5

warranted. *See Dahlman v. Am. Ass'n of Retired Persons*, 791 F. Supp. 2d 68, 76 (D.D.C. 2011) (citing *Bowden,* 106 F.3d at 437). When a plaintiff fails to meet his burden by showing that he exhausted the administrative remedies, dismissal is appropriate. *See Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996).

Although Costco argues that Briscoe failed to exhaust, the defendant only makes this claim through one conclusory sentence which states that Briscoe did not "make any allegations in his Complaint demonstrating that he exhausted his administrative remedies." *See* Def.'s Mot., ECF No. 3-1, at 7. Costco, however, has the burdens switched: failure to exhaust is an affirmative defense that must be pleaded and established by the defendant, and the plaintiff therefore need not plead exhaustion in the complaint. *See Moore v. District of Columbia*, 445 F. App'x 365, 366 (D.C. Cir. 2011) ("A plaintiff need not plead exhaustion in his complaint."); *Peters v. District of Columbia*, 873 F. Supp. 2d 158, 182 n.21 (D.D.C. 2012) ("The Court is cognizant that because failure to exhaust administrative remedies is an affirmative defense, a plaintiff does not need to plead exhaustion in a complaint."). As such, the Court denies Costco's argument to dismiss the Title VII claim for failure to exhaust, although Costco remains free to raise this issue consistent with the correct law if Briscoe elects to file an amended complaint.

### 2. Title VII: Protected Class

Costco argues that Briscoe fails to allege facts showing that he is a member of a protected class under Title VII, which provides that "[i]t shall be an unlawful employment practice for an employer … to discriminate against any individual … because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Among the prima facie elements of a Title VII hostile work environment claim are that a plaintiff must show that he is a member of one of these protected classes and that he was subjected to unwelcome harassment based on

membership in that class. *See Nichols v. Truscott*, 424 F. Supp. 2d 124, 139 (D.D.C. 2006) (citing *Davis v. Coastal Int'l Sec., Inc.,* 275 F.3d 1119, 1122-23 (D.C. Cir. 2000)). After reviewing the complaint, it is clear that Briscoe provides no allegations from which the Court can infer that he falls within one of the listed protected classes under Title VII. As such, the Court grants Costco's motion to dismiss the Title VII cause of action.

3. DCHRA: Protected Class

The DCHRA protects a broader set of classes than Title VII. *See Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 887 (D.C. 2003) ("In amending the DCHRA in 1997, the legislature emphasized … the fact that its coverage is wider than Title VII."). Specifically, the DCHRA covers discrimination and harassment related to "race, color, religion, national origin, sex, age, marital status, personal appearance, sexual orientation, gender identity or expression, family responsibilities, genetic information, disability, matriculation, or political affiliation," D.C. Code § 2-1402.11(a). The DCHRA further clarifies that "family responsibilities" refer to "the state of being, or the potential to become, a contributor to the support of a person or persons in a dependent relationship." *Id*. § 2-1401.02(12).

As previously noted, Briscoe asserts that he is the parent of an autistic son, another son with legal problems, and a daughter who was sexually assaulted. Although the exact details are sometimes unclear, at various times during his employment with Costco Briscoe was required to miss or leave work to fulfill his parental responsibilities to these children, whom he supported. Thus, construing these assertions in the most favorable light, Briscoe appears to be seeking protection for "family responsibilities" due to his children, which qualifies as a protected class under the DCHRA. *See Blocker-Burnette v. District of Columbia*, 842 F. Supp. 2d 329, 337

(D.D.C. 2012). Because Briscoe provides facts establishing himself as a member of a protected class under the DCHRA, the Court denies Costco's motion to dismiss on that ground.

### 4. DCHRA: Severe or Pervasive Harassment

The legal standard for a hostile work environment claim under the DCHRA is "substantial[ly] similar" to the standard for harassment claims under Title VII. *See Carpenter v. Fed. Nat'l Mortg. Ass'n*, 165 F.3d 69, 72 (D.C. Cir. 1999). In addition to alleging membership in a protected class, a plaintiff asserting a DCHRA hostile work environment claim must show that he endured harassment that was severe or pervasive such that it altered a term, condition, or privilege of employment. *See Odeyale v. Aramark Mgmt. Servs. Ltd. P'ship*, 518 F. Supp. 2d 179, 183 (D.D.C. 2007). Further, that discrimination must have been based on his membership in the protected class, as harassment on any other, non-protected grounds will not qualify under the statute. *See Kelley v. Billington,* 370 F. Supp. 2d 151, 157 (D.D.C. 2005) (citing *Jones v. Billington,* 12 F. Supp. 2d 1, 12 (D.D.C. 1997)). To make the "severe or pervasive" assessment, a court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne,* 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998)). "The Supreme Court has made it clear that 'conduct must be extreme to amount to a change in the terms and conditions of employment.'" *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting *Faragher,* 524 U.S. at 788). These standards "ensure that [an employment-discrimination law] does not become a general civility code" that requires judges to police "the ordinary tribulations of the workplace." *Faragher,* 524 U.S. at 788 (citation and internal quotation marks omitted); *see also Allen v. Napolitano*, 774 F. Supp. 2d 186, 204-06 (D.D.C. 2011) (plaintiff's claims of a hostile work

environment, including denial of multiple training opportunities and a non-selection for a position, amount to nothing more than typical employment grievances and ordinary workplace conflict and therefore are insufficiently severe or pervasive to support a hostile work environment claim).

As explained above, Briscoe alleges sufficient facts to demonstrate his inclusion in the protected class of "family responsibility." The Court therefore must limit its review of the Complaint only to those facts in which the allegedly hostile acts were due to Briscoe's membership in that class. *Cf. McCaskill v. Gallaudet Univ.*, No. CV 13-1498, 2014 WL 1443472, at *7 (D.D.C. Apr. 14, 2014) ("Even if the treatment to which Plaintiff was subjected could plausibly occasion a hostile-work-environment claim … she has offered no facts to support the contention that such alleged mistreatment was due to her membership in any protected class."). Upon a careful review of Briscoe's Complaint and granting all reasonable inferences in his favor, the Court finds that Briscoe has failed to allege sufficient facts to survive Costco's motion to dismiss the DCHRA count.

First, Briscoe alleges that after his daughter was sexually assaulted, Costco docked his allotted sick leave as discipline for him not coming into work. But reducing Briscoe's allowed time off after he missed shifts at work hardly qualifies as harassment, particularly when there is no suggestion that Costco actually knew the reason for Briscoe missing work. Instead, at best this appears to be nothing more than a legitimate reaction by an employer to an employee taking multiple unscheduled and unsanctioned days off, and as such, there is no basis on which to infer that Costco acted with any discriminatory purpose in making the decision. *See Childs-Pierce v. Util. Workers Union of Am.*, 383 F. Supp. 2d 60, 79 (D.D.C. 2005) (explaining that plaintiff's five-day "suspension was a legitimate non-discriminatory act brought about by plaintiff's *own*

9

misconduct. Therefore, plaintiff cannot rely on the suspension … as evidence of a pervasively hostile work environment."). And to the extent Briscoe also is alleging that he suffered other discipline as a result of caring for his daughter following the sexual assault, those allegations are so lacking in specificity that they offer no basis for the Court to reach a different result. *See Richards v. Duke Univ.*, 480 F. Supp. 2d 222, 235 (D.D.C. 2007) ("The Court does not have to accept asserted inferences or conclusory allegations that are unsupported by facts set forth in plaintiff's complaint.").

Second, the Complaint states that Briscoe's son — "son #3" — suffers from autism and a sleep disorder that caused Briscoe to arrive late for work. Again, Briscoe baldly asserts that he was "disciplined" for arriving late or missing shifts, but he provides no details about what this discipline actually entailed or how it possibly qualifies as "severe or pervasive." Absent more information regarding the nature and extent of the discipline imposed, the Court cannot find that such action qualifies as severe or pervasive based on these conclusory allegations alone.

Briscoe also alleges that he requested a fifteen-minute change in his schedule to accommodate his tardiness that occurred as a result of his caring for "son #3," a request which he suggests other employees working the same shift were granted. Even so, there are no specific facts in the Complaint suggesting that Costco knew at the time it initially denied his request that Briscoe was late for work because of his son's conditions, thus making any suggestion of discriminatory intent highly implausible — and therefore fatal to Briscoe's DCHRA claim. Instead, this once again appears to be little more than an employer reacting to an employee showing up late to work unexcused. *Cf. Childs-Pierce*, 383 F. Supp. 2d at 79 (explaining that when the employer "had a legitimate, non-discriminatory reason for denying plaintiff sick leave

10

and requiring her to submit various forms of medical verification," plaintiff "cannot rely on the denial of sick leave and related events as a basis for her hostile work environment claim").

But even if the Court assumed Costco was aware that Briscoe's tardiness was related to his family responsibility such that some discriminatory intent might be inferred, Briscoe's allegations still fall well short. That is because Costco's denial of the request for a minor, fifteen-minute change in Briscoe's schedule simply does not qualify as severe or pervasive harassment. Rather, the denial of this request is more correctly described as an isolated incident than as pervasive conduct that might plausibly have created a hostile condition. *See McCain v. CCA of Tennessee, Inc.*, 254 F. Supp. 2d 115, 121 (D.D.C. 2003) ("[A]lleged harassment is generally not held to be sufficiently severe or pervasive to create a hostile work environment where it is limited to isolated incidents.").

Similarly, the expectation that Briscoe arrive at work a few minutes earlier than he would prefer is a minor inconvenience at best, not the type of behavior that "alter[s] the conditions of the victim's employment and create[s] an abusive working environment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998); *see also Lester v. Natsios*, 290 F. Supp. 2d 11, 33 (D.D.C. 2003) ("Discrete acts constituting discrimination or retaliation claims … are different in kind from a hostile work environment claim that must be based on severe and pervasive discriminatory intimidation or insult."). Indeed, such an inconvenience appears to be nothing more than part of "the ordinary tribulations of the workplace," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) — not conduct for which an employee is entitled to legal redress under the DCHRA because it created "an abusive working environment." *Harris v. Wackenhut Servs., Inc.*, 590 F. Supp. 2d 54, 74 (D.D.C. 2008).

Third, Briscoe's muddled allegations regarding "son #1" fail for similar reasons. In the Complaint, Briscoe appears to be asserting that at an unknown time his son was arrested for a crime and held in "custody" somewhere, presumably a jail or prison. Briscoe further alleges that he was denied time off on the only days in which he could visit his son over the course of multiple weeks, although the exact number of weeks is not given. Briscoe also appears to assert that he was forced to call out of work to attend court-ordered family therapy sessions with his son and that Costco threatened to fire him if he missed more work, but the exact nature of Briscoe's claim is difficult to decipher.

Once again, there is no suggestion that the threat to terminate Briscoe or the denial of time off on an unknown number of occasions was due to a discriminatory purpose, which means the DCHRA claim fails. Even generously granting Briscoe the inference of discriminatory intent, he appears to have remained a Costco employee following these events, and he does not allege any actual consequences imposed by Costco other than the denial itself. As such, his "claims of harm are not supported by evidence of tangible workplace consequences, whether financial, physical, or professional." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008). Accordingly, Costco's denial of the requests for days off, scheduling changes, or other accommodations to his employment — and the related warnings to stop missing work and coming in late under the threat of firing — did not create an objectively hostile environment as a matter of law. *Cf. Harris-Childs v. Medco Health Solutions, Inc.*, 169 F. App'x 913, 917 (5th Cir. 2006) (evidence that the "employer treated [plaintiff] worse than non-African-American pharmacists in terms of scheduling, work performance expectations, and disciplinary incidents (including threats of termination)" did not constitute an objectively hostile work environment); *Jones v. City of Chicago*, No. 07 C 4646, 2008 WL 5111179, at *6 (N.D. Ill. Dec. 4, 2008)

(finding that employer's "[d]enial of paid time off to attend [extracurricular learning] conferences does not, either objectively or subjectively, constitute hostile or abusive conduct" under Title VII); *Townsend v. Harvey*, No. SA-05-CA-1140, 2006 WL 2605710, at *6 (W.D. Tex. Sept. 11, 2006) (explaining that "[w]hat plaintiff has alleged can most objectively be characterized as criticism of her work performance and attendance…. [C]riticism of an employee's work performance, and even a direct threat to terminate an employee, are legally insufficient to establish a hostile work environment").

Fourth, Briscoe alleges that he was denied a request to transfer to a different Costco location, although it is unclear when this request was made in relation to the other events Briscoe describes, where exactly Briscoe wanted to transfer, or why this transfer was necessary. Without such information it is difficult, if not impossible, for the Court to evaluate Briscoe's claim. In addition, and more fatally, there are no facts from which the Court could infer that the denial of Briscoe's transfer request was the result of discrimination based on his family responsibilities. In fact, the Complaint clearly indicates that Briscoe requested the transfer following his car accident, not for any family responsibility reason.

But even if the Court granted Briscoe the extraordinary inference that the denial was somehow made for a discriminatory purpose, Costco's decision, without more facts, again failed to alter the terms and conditions of Briscoe's employment such that it created a hostile work environment as a matter of law. *Cf. Dorns v. Geithner*, 692 F. Supp. 2d 119, 126-28, 135-36 (D.D.C. 2010) (concluding that plaintiff's hostile work environment claim, which included denial of requests for transfers or details to other positions and denial of four training courses, was not sufficiently severe or pervasive to be actionable); *Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 93-94 (D.D.C. 2009) (finding insufficient allegations for a hostile work environment claim

13

when plaintiff alleged that "management passed him over for performance awards, lowered his performance evaluations, unfairly reprimanded and criticized him, made disparaging remarks about his EEO complaints, closely scrutinized his work, refused him a window cubicle, removed some of his duties, … denied his requests to travel or otherwise failed to provide support for his work with staffing and funding [, ...] den[ied] a noncompetitive promotion, den[ied] a within-grade increase, and oppos[ed] his transfer to another office or detail assignment");*Charles v. Connecticut, Judicial Branch, Court Support Servs. Div.*, 556 F. Supp. 2d 123, 132-33 (D. Conn. 2008) (concluding that state agency officials' denial of employee's request for transfer did not alter terms and conditions of her employment, and thus did not create hostile work environment under Title VII, where there was no evidence that her workplace was severely permeated with discriminatory intimidation, ridicule, and insult, that terms and conditions of her employment were altered in any way, or that transfer denial was motivated by employee's race).

Perhaps in theory the denial of Briscoe's request to transfer could have created a hostile environment by forcing him to remain at a store further away from his home following the denial. Briscoe, however, clearly already had elected to work at the first location when he accepted employment there, so it is unclear how remaining at the same store after the denial suddenly became a hostile condition. But even assuming that changing external conditions for his family responsibilities made staying at the location more than a mere inconvenience and somehow prevented him from performing his job all of a sudden, the Court simply has no idea how long Briscoe worked at Costco after the denial of his request. He could have quit the next day, or he could have worked there for several more months. Because Briscoe does not allege any facts demonstrating when he actually stopped working at Costco — or any specific facts

regarding his family responsibilities during the post-transfer request timeframe — the Court has no basis to sustain Briscoe's claim on this highly speculative ground.

Finally, Briscoe provides allegations about a few statements made to him by Costco employees. Of course, only such statements related to Briscoe's family responsibilities are actionable, which makes almost all of the allegations legally irrelevant. Nonetheless, Briscoe does claim that a Costco manager once said that his son "can't be autistic everyday," apparently referring to Briscoe's repeated tardiness and related requests for a later start time. *See* Pl.'s Mem. in Opp'n, ECF No. 8, at 2. The Court, however, cannot take this allegation into consideration because it is axiomatic that a plaintiff may not amend the complaint through facts first alleged in an opposition brief. *See, e.g.*, *Sloan v. Urban Title Servs., Inc.*, 689 F. Supp. 2d 94, 114 (D.D.C. 2010).[3]

For the reasons discussed above, the Court finds that Briscoe has failed to allege facts demonstrating that he endured harassment that was severe or pervasive such that it altered a term, condition, or privilege of employment. At best, Briscoe describes a series of isolated decisions by Costco that appear to have had no effect on his actual employment conditions, other than perhaps making him work a slightly different schedule than he preferred. There also are inadequate facts suggesting that any action taken by Costco was due to discrimination based on Briscoe's family responsibilities, as the DCHRA requires. Accordingly, the Court grants Costco's motion to dismiss the DCHRA claim.

---

3   But even if the Court was to give it consideration, courts consistently have held that one statement, no matter how offensive, typically is insufficient to maintain a hostile work environment claim. *See George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) ("[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (citations and internal quotation omitted)). The statement about Briscoe's son clearly is not the type that qualifies as an "extremely serious" incident.

## C. FMLA

Costco argues that Briscoe's interference claim under the FMLA should be dismissed because Briscoe did not allege facts showing that he was an eligible employee at the time he requested leave.[4] The FMLA requires that employers give "eligible employees" up to twelve weeks leave during any twelve-month period due to a serious health problem, a family member's serious illness, or the arrival of a new son or daughter "that makes the employee unable to perform." 29 U.S.C. § 2612(a)(1). Under the FMLA, an eligible employee is an employee of a covered employer who has been employed for at least 1,250 hours of service during the twelve-month period immediately preceding the commencement of the leave. *See* 29 C.F.R. § 825.110(a)(2). The determination of whether an employee meets the hours of service requirement is made at the date the FMLA leave is to start. *See id*. § 825.110(d); *see also Butler v. Owens-Brockway Plastics Prods., Inc.,* 199 F.3d 314, 315-16 (6th Cir. 1999) (holding that the hours must be computed from the date of commencement of leave). A plaintiff bears the burden of establishing that he was entitled to FMLA leave; otherwise, dismissal is required. *See Hollabaugh v. Office of the Architect of the Capitol*, 847 F. Supp. 2d 57, 65-66 (D.D.C. 2012).

Although Briscoe asserts that he worked at Costco for about fourteen to sixteen months, he also alleges that he "did not become full time until well after 6-7 months." Compl., ECF No. 1-1, at 2. But there are no factual allegations regarding the hours he worked, or even when exactly he supposedly requested the qualifying leave. It also is unknown when the leave supposedly would have started such that the Court might know the twelve-month period in which to count Briscoe's hours. As such, the Court has no basis for determining whether Briscoe was

---

[4] The FMLA authorizes two types of claims: interference claims under § 2615(a)(1) and retaliation claims under § 2615(a)(2). The Complaint does not specify whether Briscoe also asserts a retaliation claim, but he will be given the opportunity to clarify through an amended complaint.

an eligible employee under the statute, and Briscoe therefore falls well short of meeting his burden. Accordingly, the Court grants Costco's motion to dismiss the FMLA cause of action.[5]

### D. Privacy Claims

Finally, Costco contends that Briscoe's claims under the "D.C. Child Privacy Act" and the "Health Privacy Act of 1996" must be dismissed because these are not actual statutes under the laws of the United States or the District of Columbia. Dismissal, of course, is required when a plaintiff fails to identify a legitimate legal basis for a cause of action. The Court agrees with Costco that there is no "D.C. Child Privacy Act" or a "Health Privacy Act of 1996." There are, however, similar sounding laws such as the D.C. Prevention of Child Abuse and Neglect Act, and the federal Health Insurance Portability and Accountability Act of 1996. But neither of these statutes creates a private cause of action under which an employee can bring a claim against his private employer, as Briscoe seems to attempt here. *See* D.C. Code § 4-1302.09 ("All violations of [the D.C. Prevention of Child Abuse and Neglect Act] shall be prosecuted by the Corporation Counsel of the District of Columbia or his or her designee in the name of the District of Columbia."); *Want v. Express Scripts, Inc.*, 862 F. Supp. 2d 14, 19 (D.D.C. 2012) ("HIPPA does not authorize an individual to bring a private cause of action."); *Bibeau v. Soden*, No. 808-CV-0671, 2009 WL 701918, at *6 (N.D.N.Y. Mar. 13, 2009) ("If a HIPPA violation occurs, the statute does not provide a private cause of action to the individual but merely provides an enforcement mechanism for the Secretary of Health and Human Services."). Because it does not

---

[5] Costco also argues that Briscoe did not assert facts showing that he was denied leave to which he was entitled under the FMLA. Briscoe appears to allege that Costco violated the FMLA when it denied requests related to his daughter's sexual assault, his son's probation visits, and for an alternate schedule with more breaks and a later start time. *See* Compl., ECF No. 1-1, at 3-4. All these requests, however, appear to be for scheduling changes that are generally outside the protections of the FMLA. *See Jenkins v. Rinaldi*, No. 1:99CV629, 2001 WL 34564362, at *5 (M.D.N.C. Mar. 23, 2001) ("[T]he FMLA is, by its terms, a *leave* act, not a scheduling act."). Again, Briscoe can clarify these ambiguities in an amended complaint.

appear that Briscoe is asserting any cognizable legal theory regarding these issues, the Court grants Costco's motion to dismiss the claims.[6]

## IV. LEAVE TO AMEND

Pursuant to Rule 15, a court should grant leave to amend a complaint when "justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Willoughby v. Potomac Elec. Power Co.,* 100 F.3d 999, 1003 (D.C. Cir. 1996). In addition, "when a claim is so ambiguous as to leave its viability in doubt, the appropriate action is to grant leave to amend." *B.R. ex rel. Rempson v. District of Columbia,* 524 F. Supp. 2d 35, 42 (D.D.C. 2007). This is particularly true when the claimant is acting *pro se* because "an added measure of leniency is extended to *pro se* litigants with regard to procedural requirements." *Plummer v. Safeway, Inc.,* 934 F. Supp. 2d 191, 197 (D.D.C. 2013) (citing *Moore v. Agency for Int'l Dev.,* 994 F.2d 874, 877 (D.C. Cir. 1993)). Granting Briscoe the benefit of the doubt that it remains possible for him to assert a sufficient claim if he provides additional facts and clarity in a future filing, the Court will grant him leave to file an amended complaint.[7]

---

[6] Separately, in the District of Columbia, law enforcement records and files concerning a child are generally not open to public inspection, *see* D.C. Code § 16-2333, and a juvenile's court records can be sealed pursuant to D.C. Code § 16-2335, which provides that "a juvenile shall not be required to disclose and shall have the right to refuse disclosure of his or her juvenile delinquency history in an application for employment, education, or housing." It remains unclear, however, whether these or any other similar protections might apply to Briscoe's son because the Complaint does not include the son's age. It also is unclear if these laws would permit a private cause of action in the first place, but the Court need not reach that question at this time.

[7] Costco's motion to dismiss does not address Briscoe's claim under the D.C. Wage Payment Act, which requires employers to pay all wages earned to employees. *See* D.C. Code § 32-1302. The Act is narrowly constructed and applies only when wages are not in dispute, as the law "functions as an exception (for disputed wages) to the [Act's] requirement." *Fudali v. Pivotal Corp.*, 310 F. Supp. 2d 22, 29 (D.D.C. 2004). It is unclear if Briscoe alleges a valid claim given the limited facts in the Complaint, but the Court need not address the issue at this time because Costco does not move to dismiss it. If Briscoe clarifies such a claim in an amended

## V.  CONCLUSION

For the foregoing reasons, the Court grants Costco's motion to dismiss. The Court, however, grants Briscoe leave to file an amended complaint within thirty days of this decision. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  July 29, 2014                                                                       RUDOLPH CONTRERAS
                                                                                                            United States District Judge

---

complaint, Costco will have more information on which to assess whether to move to dismiss the cause of action.